**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **DESHAWN LOMAS** | **NO. 06-158-D-M2** |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

Signed in chambers in Baton Rouge, Louisiana, May 20, 2009.

_____
MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                            CRIMINAL ACTION

VERSUS

DESHAWN LOMAS                                        NO. 06-158-D-M2

**MAGISTRATE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. Doc. 81) filed by petitioner, Deshawn Lomas ("Lomas" or "petitioner").  The United States of America ("United States") has filed an opposition and a supplemental opposition (R. Docs. 91 and 93) to Lomas' motion.

**FACTS & PROCEDURAL BACKGROUND**

A federal grand jury charged Lomas by indictment, on July 20, 2006, with the following:  Count One, conspiracy to possess with the intent to distribute and to distribute 3, 4-methylenedioxymethamphetamine (MDMA), also known as "ecstasy," and fifty (50) grams or more of cocaine base, also known as "crack" cocaine; Counts Two through Five, distribution of five (5) grams or more of cocaine base, also known as "crack" cocaine;  and Count Six, distribution of fifty (50) grams or more of cocaine base.   Lomas was subsequently charged, by superseding indictment on August 31, 2006, with an additional Court, Count Seven, possession of cocaine, in violation of 21 U.S.C. §§ 846, 841, and 18 U.S.C. § 2.

The United States filed an Information on October 2, 2006, seeking to statutorily enhance petitioner's penalties, if he was convicted, based upon the fact that petitioner had a prior felony conviction in the Middle District of Louisiana for a drug trafficking-related

1

offense.[1]  On that same date, the United States also filed a Motion to Offer "Other Crimes Evidence," seeking to introduce evidence not only of petitioner's prior felony drug trafficking conviction in the Middle District of Louisiana but also relating to another felony drug trafficking conviction in the 23rd Judicial District Court, Ascension Parish, Louisiana.[2]

On January 19, 2007, the United States filed a Supplement to its Motion to Offer "Other Crimes Evidence," wherein it requested permission to offer evidence at petitioner's trial regarding his felony conviction for possession of cocaine in the 23rd Judicial District Court as well as admissions petitioner made when he was arrested regarding his drug trafficking activities.

Petitioner pled guilty to the charges against him on March 7, 2007.  On September 21, 2007, the presentence investigation report ("presentence report") was disclosed electronically to the attorneys of record.  An addendum to that report was published on January 21, 2008.  On March 20, 2008, petitioner was sentenced to three hundred (300) months in the custody of the Bureau of Prisons on Counts One through Six to be served concurrently with twenty-four (24) months confinement for Count Seven.

On January 5, 2009, petitioner filed the present motion to vacate, set aside or correct his sentence.  The following four (4) claims are set forth in his motion:  (1) that he

---

[1] On or about December 1, 1995, petitioner had been convicted in the Middle District of Louisiana of possession with intent to distribute cocaine base in violation of 21 U.S.C. §841(a)(1) and had been sentenced to serve fifty-one (51) months in the custody of the U.S. Bureau of Prisons.

[2] On or about June 20, 1995, petitioner pled guilty in the 23rd Judicial District Court to distribution and possession of cocaine in 1995 and 1993 respectively.  For those crimes, petitioner was sentenced to serve concurrent sentences of seven (7) years at hard labor (with credit for time served) on the distribution offense and eighteen (18) months confinement at hard labor on the possession offense.

received ineffective assistance of counsel because (a) his counsel failed to argue that he was entitled to a reduction in his sentence due to the "substantial assistance" he provided to the Government in the investigation and prosecution of another, (b) his counsel failed to object to the two-level sentence enhancement for possession of a firearm, (c) his counsel failed to object to "issues" in the presentence report, (d) his counsel failed to file a notice of appeal and to perfect or preserve issues for appeal, and (e) his counsel failed to properly investigate the case; (2) his sentence was illegally enhanced under USSG §2D1.1(b)(1); (3) the United States breached the Plea Agreement when the Court adopted the findings of the presentence report and sentenced petitioner as a career criminal pursuant to the U.S. Sentencing Guidelines; and (4) the United States acted in bad faith in failing to file a motion pursuant to USSG §5K1.1 or Rule 35(b), seeking a reduction of petitioner's guidelines offense level because of the "substantial assistance" he provided in the investigation and prosecution of another.

## **LAW & ANALYSIS**

**I.    Ineffective Assistance of Counsel claims:**

To prove ineffective assistance of counsel, Lomas must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

(1)    that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)    that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. (See *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987)). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. (See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816. Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to

undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17.

**(A)** **Was petitioner's counsel ineffective in failing to argue that petitioner was entitled to a sentence reduction as a result of his "substantial assistance" to the Government?**

Contrary to petitioner's argument, it appears that his counsel did, in fact, discuss with the sentencing judge and counsel for the United States, during pre-sentencing conferences, the assistance that petitioner allegedly provided to the United States in the investigation and prosecution of another individual.[3] The sentencing judge, petitioner's counsel, and counsel for the United States made reference to those discussions during petitioner's sentencing hearing. For example, on page 6 of the sentencing transcript, petitioner's counsel explains that Lomas provided a "great deal of assistance with Ms. Brand[y] Mitchell with respect to input" but that defense counsel would not make any further comments on the record in that regard at the sentencing hearing. *See*, R. Doc. 86, p. 6-7. Petitioner's counsel also made reference to the in-chambers discussions of Lomas' assistance on page 7 of the sentencing hearing transcript, where he stated:

> I'd ask the Court to consider the lower end of any guidelines with respect to this case and specifically, I'm well aware of lots of matters regarding work that has been done between the time [Lomas] has pled guilty and today, which I choose not to raise at this time, but ask the Court to consider our discussions in chamber[s], which are not part of this record."

---

[3] Petitioner contends that such "assistance" consisted of a friend of his, Brandy Mitchell, helping agents in the investigation and prosecution of another so that the petitioner could be credited with that assistance.

5

*Id.,* p. 7. Petitioner himself also made reference to the "aid" he provided to the government during his sentencing hearing. *Id.*, p. 8. Counsel for the United States also acknowledged, at the sentencing hearing, that petitioner's girlfriend assisted the Government but "beg[g]ed to differ with the defendant's representation that . . . he ha[d] provided assistance for the Government." *Id.*, p. 9-10.[4] Finally, the sentencing judge confirmed, during the sentencing hearing, that he had received additional information regarding Lomas' sentencing from his counsel during several conferences. *Id.*, p. 6. Thus, Lomas' claim that his counsel failed to raise his alleged assistance to the Government as a basis for reducing his sentence is without merit. His counsel specifically requested that the Court impose a sentence at the low end of the guidelines range because of petitioner's alleged cooperation with the Government. This claim should therefore be dismissed.

**(B)  Was petitioner's counsel ineffective because he failed to object to the two-level sentence enhancement for possession of a firearm?**

At the sentencing hearing, petitioner's counsel indicated that he had reviewed the presentence report and discussed it with Lomas on more than one occasion. *Id.*, p. 3. He specifically stated that he had "carefully considered many of the issues in [the presentence report]" and decided not to object to any of those issues. *Id.* The primary focus of petitioner's counsel's arguments at the sentencing hearing was upon obtaining a three-level reduction in petitioner's offense level by arguing that Lomas had fully accepted responsibility for the crimes he committed. It is apparent that, in not objecting to the two-

---

[4] At the sentencing hearing, counsel for the United States argued that petitioner's "assistance" had not been "complete" but also indicated that he would not go into details concerning that assistance during the sentencing hearing since it had already been discussed with the Court in pre-sentencing conferences.

6

level increase of petitioner's sentence for possession of a firearm, petitioner's counsel was pursuing a strategy. Specifically, he was seeking to avoid the possibility of petitioner's losing the three-level reduction of offense level for acceptance of responsibility. Petitioner's counsel's statement on page 4 of the sentencing hearing transcript substantiates that finding:

> The defendant, in terms of accepting responsibility with his guilty plea and acceptance of responsibility today before the Court, acknowledges that he is one in the same defendant that has a prior conviction and does not wish to contest that as part of his acceptance of responsibility.

*Id.*, p. 5. In other words, as part of his acceptance of responsibility, petitioner was willing to concede on other arguments that could be used to enhance his sentence, such as acknowledging that he was a career offender. As the United States aptly put it in its opposition to Lomas' present motion, "[petitioner's c]ounsel chose to be careful about raising frivolous objections which could endanger petitioner's chances of obtaining a reduction for acceptance of responsibility." *See*, United States' opposition, p. 7. As discussed above, under the *Strickland* standard, such a strategic decision is entitled to great deference and is presumed to be within the wide range of reasonable professional competence. Accordingly, petitioner's counsel's failure to object to the two-level enhancement of petitioner's sentence for possession of a firearm was not deficient.

Additionally, Lomas was not prejudiced by his counsel's failure to object to the two-level enhancement for possession of a firearm because such enhancement was not determinative of his total offense level. Instead, petitioner's total offense level (and thus, his sentence of 300 months) was determined based upon the Court's finding that, under USSG § 4B1.1, Lomas was a career offender. Because Lomas was found to be a career

7

offender, his offense level was 37, and he had a criminal history category of VI, resulting in a guidelines imprisonment range of 360 months (30 years) to life. The Court's finding of acceptance of responsibility reduced Lomas' total offense level to 34, yielding a guidelines imprisonment range of 262 months (21 years) to 327 months (27.25 years). Petitioner received a sentence in the middle of that range. Thus, the initial, upward adjustments for his possession of a firearm (and other offense characteristics, such as the amount of "crack" attributable to him or his leadership role in the offenses) did not have any impact upon the sentencing guidelines range to which he was exposed and under which he was ultimately sentenced to serve. Accordingly, this claim should be dismissed.

**(C)    Was petitioner's counsel ineffective in failing to object to "issues" in the presentence report?**

The Court agrees with the United States that this claim should be dismissed because petitioner failed to identify any specific errors within the presentence report to which his counsel should have objected. *See, Strickland*, at 690 (A defendant alleging ineffective assistance of counsel "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and the court must then determine whether, in light of all of the circumstances, the "identified acts or omissions" were outside the wide range of professionally competent assistance).

**(D)    Was petitioner's counsel ineffective because he failed to file a notice of appeal and to perfect or preserve issues for appeal?**

Pursuant to the Plea Agreement entered between petitioner and the United States on March 7, 2007, petitioner expressly waived the right to appeal his conviction and sentence, reserving his right to appeal only under the following circumstances: (1) any

punishment imposed in excess of the statutory maximum; (b) any punishment which is an upward departure pursuant to the guidelines; and (c) any punishment which is above the guidelines range calculated by the Court.  *See*, R. Doc. 57, p. 4.  During his re-arraignment hearing on March 7, 2007, petitioner confirmed before the Court that he understood that he was waiving his right to appeal his conviction and sentence with the limited exceptions mentioned above.  *See*, R. Doc. 85, p. 16-17.  Because petitioner does not allege in his motion to vacate that his counsel failed to file a notice of appeal based upon any of those limited exceptions and only vaguely alleges that his counsel failed to file a notice of appeal, the Court cannot find that this claim has merit.

Additionally, even assuming petitioner is asserting that his attorney was ineffective in failing to object and preserve for appeal and then to appeal his sentence because of the two-level enhancement for possession of a firearm, such an argument is also unmeritorious because, as discussed above, the two-level enhancement for possession of a firearm was not determinative of petitioner's sentencing guidelines range.  Thus, even if his counsel had appealed that issue and the Fifth Circuit Court of Appeals overturned the two-level enhancement, petitioner still would have been sentenced within the same guidelines range, *i.e.*, 262 months (21 years) to 327 months (27.25 years).  Furthermore, petitioner has suffered no prejudice from his counsel's failure to preserve for appeal the two-level sentence enhancement issue since he waived his right to appeal any sentence imposed upon him pursuant to the U.S. Sentencing Guidelines that was not the result of an upward departure.  Accordingly, this claim should also be dismissed.

**(E)    Was petitioner's counsel ineffective in failing to properly investigate the case?**

This claim is also without merit because of petitioner's failure to provide any details concerning what his attorney should have investigated and how the information ascertained from such investigation would have helped petitioner's cause. Where a petitioner fails to set forth any argument or evidence supporting his claim that his trial counsel was ineffective and simply relies upon vague and general allegations, his claim should be dismissed. *U.S. v. Farr*, 297 F.3d 651 (7th Cir. 2002); *U.S. v. Daniels*, 12 F.Supp.2d 568 (N.D.Tex. 1998)(Conclusory allegations cannot serve as the basis for a claim of ineffective assistance of counsel in a §2255 motion); *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994)("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a 'habeas court cannot even begin to apply *Strickland*'s standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any of the deficiencies in counsel's performance'"); *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995)(A defendant has the burden of supplying "sufficiently precise information [regarding] the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result").[5]

## II.   Was petitioner's sentence illegally enhanced under USSG §2D1.1(b)(1)?

---

[5] *See also, Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987)(A defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000)(An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found).

In this claim, petitioner contends that his sentence was illegally enhanced under USSG §2D1.1(b)(1) when the Court assessed a two-level increase in his sentence for his possession of a firearm during the course of conduct or common scheme of the drug trafficking violations to which he pled guilty. Specifically, he asserts that the trial court erred in increasing his base offense level because the characteristic of the offense which brought about the enhancement (*i.e.*, petitioner's possession of a firearm) was: (1) never discussed during the plea hearing; (2) the firearm was never proved to have been used or carried by the defendant, (3) the defendant never admitted or stipulated to the weapon at the plea hearing or sentencing, (4) the weapon was never made a part of the factual basis for the Court to accept as part of the plea of guilty, and (5) the weapon was never included as part of the plea agreement. Petitioner contends that the enhancement under USSG § 2D1.1(b)(1) was therefore a violation of his Sixth Amendment right to a trial by jury and in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *U.S. v. Booker,* 125 S.Ct. 738, 755-56, 160 L.Ed.2d 621 (2005), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Petitioner's claim should be dismissed for several reasons. First, through the plea agreement, petitioner waived his right to collaterally attack or appeal any sentence imposed upon him pursuant to the U.S. Sentencing Guidelines that was not the result of an upward departure, and, as mentioned above, the two-level enhancement of his sentence for possession of a firearm was not determinative of his sentencing guidelines range nor did it result in an upward departure from that range. As such, petitioner waived this claim.

Secondly, even if petitioner had not waived this claim, the claim should nevertheless be dismissed because his arguments under the Sixth Amendment and the above-cited

11

jurisprudence lack merit now that the U.S. Sentencing Guidelines are no longer mandatory.[6]  A *Booker* error, like that alleged by petitioner, occurs when the sentencing judge who is bound by *mandatory* U.S. Sentencing Guidelines increases the defendant's sentencing range based upon facts not found by the jury or admitted by the defendant. *U.S. v. Stevens*, 487 F.3d 232 (5th Cir. 2007); *United States v. Mares*, 402 F.3d 511, 518 (5th Cir. 2005), *cert. denied*, 546 U.S. 828, 126 S.Ct. 43, 163 L.Ed.2d 76 (2005).  That did not occur in this case, where Lomas was sentenced under the post-*Booker advisory* Guidelines system.  Under *Booker*, "with the mandatory use of the Guidelines excised, . . . [t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of the Guideline[s] sentencing range." *Stevens*, at 246.  That is exactly what occurred in this case, and accordingly, no *Booker* error occurred relative to Lomas' sentencing.

The district judge in this case increased Lomas' offense level pursuant to U.S.S.G. 2D1.1(b) based upon information contained in the presentence report.  The Fifth Circuit Court of Appeals has held that a presentence report "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *U.S. v. Trujillo*, 502 F.3d 353 (5th

---

[6] In *United States v. Booker*, a majority of the U.S. Supreme Court extended to the federal Sentencing Guidelines the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d (2004), which is as follows:  Pursuant to the Sixth Amendment, any fact, other than the fact of a prior conviction, "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756.  A different majority of the Supreme Court then excised particular statutory provisions that made the Sentencing Guidelines mandatory, thereby rendering the Guidelines only advisory. *Id.* at 756-57.

Cir. 2007); *U.S. v. Franklin*, 148 F.3d 451 (5th Cir. 1998).  A district court "may adopt the facts contained in a [presentence report] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability[,] and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable."  *Trujillo*, at 357.  "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue."  *Id.*

According to the presentence report in this matter, an associate involved in Lomas' drug-trafficking activities testified, during grand jury proceedings, that Lomas often carried firearms when he conducted his drug business.  That associate indicated that he saw Lomas conceal the guns under the hood of his vehicles in the battery compartment when traveling, in case he was stopped by the police.  Once Lomas arrived where he was going, he would put the gun on his person.  *See,* ¶29 of the Presentence Investigation Report.  Such facts provide an adequate evidentiary basis to conclude that Lomas carried firearms when he conducted his drug trafficking-related business, and Lomas did not present any evidence demonstrating that the information contained in the presentence report in that regard was "materially untrue."  As such, the district judge properly relied upon the facts contained in the presentence report relative to Lomas' possession of a firearm in enhancing his sentence.  It is irrelevant that the facts relating to petitioner's possession of a firearm were not included in the plea agreement itself or discussed at the plea hearing.[7]  In the plea

---

[7] In order to accept Lomas' guilty plea, the district judge only needed to find that the plea was entered knowingly and voluntarily and that a factual basis existed for the offenses charged.  Allegations concerning petitioner's firearm possession (which relate to an offense characteristic relevant to sentencing) did not need to be included in the plea agreement for the district judge to properly make those findings.

agreement, Lomas acknowledged that the Court was not bound by the stipulated facts contained in that agreement. *See*, R. Doc. 57, ¶13, p. 9. Moreover, during his re-arraignment hearing on March 7, 2007, he acknowledged that he understood that his sentence would be rendered by the district judge after the sentencing guidelines had been considered in conjunction with the presentence report and after the defendant had been allowed the opportunity to object to the information contained in the presentence report. *See*, R. Doc. 85, p. 20, 23. Accordingly, petitioner was aware of his opportunity to object to the factual information contained in the presentence report, and he nevertheless chose not to do so, probably for his counsel's strategic reasons, as discussed above. For all of the above reasons, the Court finds that petitioner's claim challenging the enhancement of his sentence based upon his possession of a firearm should be dismissed.

III.    **Did the United States breach the Plea Agreement when the Court adopted the findings of the Presentence Report and sentenced petitioner as a career criminal under USSG §4B1.1?**

Petitioner argues in his present motion that the United States breached the Plea Agreement when it led him to believe that he would not be sentenced as a career offender. The Plea Agreement, however, does not contain a promise by the United States that petitioner would not be sentenced as a career offender; instead, it only provides that the United States would not file an information seeking a mandatory term of life imprisonment based upon petitioner's prior felony drug convictions, which the United States did not do.[8]

---

[8] The information filed by the United States on October 2, 2006 sought to statutorily enhance petitioner's sentence based upon his prior felony conviction in the Middle District of Louisiana. The United States did not rely upon petitioner's other prior felony drug conviction in the 23rd Judicial District Court to enhance petitioner's sentence. Had the United States relied upon two or more prior felony drug convictions, rather than one, petitioner would have faced a mandatory term of life imprisonment upon conviction.

*See*, R. Doc. 57, p. 2.  By signing the Plea Agreement, petitioner "acknowledge[d] that there [was] no agreement with the United States as to the actual sentence that [would] be imposed by the Court as a result of th[e] Plea Agreement and acknowledge[d] that no promises or assurances [had] been made to him as to what the sentence [would] be."  He further agreed that the terms of the Plea Agreement constituted the entire agreement between the Untied States and himself and that no other promises or inducements had been made.  *Id.*, p. 9.  He also acknowledged that the Court, while not bound to apply the Sentencing Guidelines, had to "consult the guidelines and take them into account when sentencing."  *Id.*, pp. 6, 9.

At his re-arraingment hearing on March 7, 2007, petitioner confirmed that his counsel had explained his Plea Agreement to him as well as how the sentencing guidelines might apply to his case.  *See*, R. Doc. 85.  He indicated that no one other than his attorney had made any prediction as to the length of any sentence that the Court might impose.  *Id.*  It is clear that the United States did not promise petitioner that he would not be sentenced as a career criminal and that petitioner understood that fact.  Additionally, since at least October 2006, petitioner had been aware of the fact that the United States may introduce evidence of his prior crimes and seek an enhancement of his sentence based upon his status as a career criminal, and he asserted no objection thereto.  He even stipulated to one of his previous felony drug convictions at his sentencing hearing as part of a strategy so that he could receive a three-level reduction of his offense level based upon his acceptance of responsibility.  As such, there is no doubt that petitioner was well aware that

---

*See*, 21 U.S.C. §841(b)(1)(A).  Since the United States did not do so, it did not breach the Plea Agreement.

15

he could be sentenced as a career offender at the time he entered his plea agreement and that the United States did not breach that agreement by pursuing a sentence against him as a career criminal. This claim should therefore also be dismissed.

### III. Did the United States act in bad faith in failing to file a motion pursuant to USSG §5K1.1 or Fed. R. Cr. P. 35?

In his final argument, petitioner contends that the United States breached the Plea Agreement by not filing a motion pursuant to USSG §5K1.1 or Rule 35(b) for a downward departure of his guidelines offense level based upon the alleged "substantial assistance" that he provided to the Government in the investigation and prosecution of another. However, under the terms of the Plea Agreement, the United States was not required to file a motion for downward departure pursuant to §5K1.1 or Rule 35. Paragraph 6 of the Plea Agreement provides that "[t]he United States . . . is not obliged, as a condition of this Plea Agreement, to file any motion with the Court, either for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines or to reduce the defendant's sentence under Rule 35 of the Federal Rules of Criminal Procedure." Furthermore, under the Plea Agreement, even if such a motion was filed, "the Court, in its discretion, may or may not reduce the sentence below the guidelines range otherwise applicable." *See*, R. Doc. 57, pp. 2-3.[9]

---

[9] The district judge fully explained this portion of the plea agreement to the defendant at his March 7, 2007 re-arraignment hearing, and petitioner indicated that he understood that the United States was not obligated to move for a downward departure of his sentence nor to file a motion to reduce his sentence under the applicable Federal Rules of Criminal Procedure and that, if such a motion was filed, it was within the district judge's discretion as to whether the motion would be granted. *See*, R. Doc. 85, p. 15.

Thus, based upon the Plea Agreement, it was completely within the discretion of the United States as to whether or not it wished to file a motion pursuant to USSG §5K1.1 or Rule 35.  It appears, based upon argument by the United States' counsel at the sentencing hearing, that the United States did not find petitioner's alleged "assistance" to the Government to have been sufficiently "complete" to warrant a downward departure.  As discussed above, according to the United States' argument at the sentencing hearing, petitioner's alleged assistance was provided by his girlfriend, rather than himself.  Considering that the United States made no promise to petitioner in the Plea Agreement to file a motion pursuant to §5K1.1 or Rule 35 and that it did not feel that it had an adequate basis to do so, the Court does not find that the United States acted in bad faith in deciding not to file such a motion.[10]  Moreover, given that it was within the Court's discretion as to whether or not to reduce the sentence below the applicable sentencing guidelines if such a motion had been filed, there is no way for petitioner to prove that, if a motion had been filed by the United States pursuant to §5K1.1 or Rule 35, his sentence actually would have been reduced below the guidelines range that was applied to him.

Finally, it has been held that a refusal by the United States to file a motion for a downward departure of a defendant's guidelines range if the defendant provides "substantial assistance" in the investigation and prosecution of another is only an abuse of the United States' discretion under §5K1.1 where that refusal is based upon an improper

---

[10] According to the United States' opposition to petitioner's present motion, during a status conference in chambers prior to petitioner's sentencing hearing, counsel for the United States also explained to the Court and to the defendant why it had elected not to file a §5K1.1 motion on the defendant's behalf, even though petitioner "was not entitled to such an explanation."  *See*, R. Doc. 91, p. 14.

17

constitutional motive, such as race or religion. *Wade v. United States*, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). Petitioner has failed to demonstrate that the United States' decision not to file a §5K1.1 motion in this case was based upon an improper constitutional motive. As such, this claim should be denied. *Wade*, at 186 ("[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive").

Because the motions, files and records of this case conclusively show that petitioner is not entitled to any relief, the present motion should be denied without the necessity of an evidentiary hearing. *U.S. v. Bartholomew*, 974 F.2d 39 (5th Cir. 1992).

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. Doc. 81) filed by petitioner, Deshawn Lomas, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, May 20, 2009.

_____
MAGISTRATE JUDGE CHRISTINE NOLAND